NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Respondent, *v.* HENRY WELSH et al., Appellants.

The legislature has power to authorize a foreign railroad corporation, lawfully operating its road within this state, to acquire by condemnation additional lands required for railroad purposes.

Such a corporation, in the contemplation of the statutes of the state and to the extent of its existence and operation here, is *pro hac vice* a state corporation.

Accordingly *held*, that the term "every railroad corporation" in the General Railroad Law (§ 4, chap. 565, Laws of 1892), and, *it seems*, the term "all existing corporations" in the General Railroad Act of 1850 (Chap. 140, Laws of 1850) includes foreign railroad corporations, which under authority of law have extended and are operating their roads in this state, and that under the former act (§ 7) such a corporation had authority to acquire by condemnation additional real estate when needed for the proper operation of its road and to meet the public demands of travel and traffic.

(Submitted October 18, 1894; decided October 30, 1894.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made the second Monday of February, 1893, which affirmed an order of Special Term denying a motion by defendant to dismiss the petition of the plaintiff for the condemnation of certain lands belonging to defendants for railroad purposes.

The facts, so far as material, are stated in the opinion.

*Martin J. Keogh* for appellants. A foreign corporation can acquire no right to condemn lands in this state unless such right is expressly conferred by statute. This rule applies equally to all corporations, foreign or domestic. The statute

delegating the right to exercise the power of eminent domain, being a right in derogation of common law, must be construed strictly and cannot be extended by implication. (*People* v. *Smith*, 21 N. Y. 595 ; *N. Y. C. & H. R. R. R. Co.* v. *Kipp*, 46 id. 546 ; *In re Comrs. Central Park*, 50 id. 493.)   It is a well-settled rule of construction that a general law cannot repeal, modify or extend a special law by implication. (*Whipple* v. *Christian*, 80 N. Y. 523 ; *McKenna* v. *Edmundstone*, 91 id. 231 ; *People* v. *Jaehne*, 103 id. 182 ; *In re Comrs. of Central Park*, 50 id. 493 ; Laws of 1850, chap. 140, §§ 13, 49 ; Code Civ. Pro. § 3359.)   The order made by the county judge of Westchester county denying the application of the village of New Rochelle to condemn this property has never been modified or reversed and is *res adjudicata* and binding upon the plaintiff in this proceeding. (*Pray* v. *Hegeman*, 98 N. Y. 351 ; *Marsh* v. *Masterton*, 101 id. 401 ; *C. P. Co.* v. *Walker*, 114 id. 7 ; *Decker* v. *Decker*, 108 id. 134 ; *Lorillard* v. *Clyde*, 122 id. 41 ; *Leavitt* v. *Wolcott*, 95 id. 212 ; *Parkhurst* v. *Hendell*, 10 id. 386.)

*Page & Taft* for respondent.   The plaintiff had authority to take this proceeding to acquire land for railroad purposes. (*Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455 ; *In re N. Y. C. R. R. Co.*, 4 Hun, 381 ; Laws of 1890, chap. 565 ; *Mangam* v. *City of Brooklyn*, 98 N. Y. 591 ; *Mosier* v. *Hilton*, 15 Barb. 657, 665 ; *Clarkson* v. *H. R. R. R. Co.*, 12 N. Y. 304 ; *Demarest* v. *Flack*, 128 id. 205 ; *N. Y. & E. R. R. Co.* v. *Young*, 33 Penn. St. 175 ; Code Civ. Pro. § 3359.)   The issues of fact made by the general denial of the allegations of the petition are judicial questions to be determined from the evidence and circumstances of the case. (*In re N. Y., L. & W. R. Co.*, 35 Hun, 220, 229 ; *In re Rensselaer* v. *S. R. R. Co.*, 43 N. Y. 137, 144 ; *In re N. Y. & H. R. R. Co.* v. *Kip*, 46 id. 552 ; *In re N. Y. C. R. R. Co.*, 66 id. 407, 410 ; *In re N. Y. C. R. R. Co.*, 77 id. 264.)   This court will not review the conclusion of the Supreme Court upon these questions. (*In re U. E. R. R. Co.*, 113 N. Y. 275, 282 ; *In re Thomp-*

*son*, 121 id. 277 ; *In re City of Rochester*, 137 id. 243 ; *In re Middletown*, 82 id. 200 ; *In re Marsh*, 71 id. 318 ; *In re P. P. & C. I. R. R. Co.*, 67 id. 377.) The questions involved herein are not *res adjudicata.* (Laws of 1872, chap. 440 ; Laws of 1867, chap. 176 ; Laws of 1864, chap. 249.)

GRAY, J. This proceeding was instituted by the New York, New Haven and Hartford R. R. Co., a corporation organized under the laws of the state of Connecticut, to condemn, for railroad purposes, certain lands of the defendants, in the village of New Rochelle. It was opposed by the defendants upon various grounds ; but the only one we deem it necessary to discuss is that the plaintiff, as a foreign corporation, had received its only powers through a special act of the legislature of this state (Chapter 195 of the Laws of 1846) and that they were long since exhausted. The argument is made upon the proposition that, as a foreign corporation, it could acquire no right to condemn lands in this state, unless such right were expressly conferred by statute ; and that it cannot avail itself of the powers given to corporations of this state by General Railway Acts. By the special act of 1846, the petitioning company (then the New York and New Haven R. R. Co.) were given " permission and authority * * * to continue and extend their railroad from the dividing lines of the states of New York and Connecticut, by such route as shall be established by said company, through the county of Westchester, to the New York and Harlem R. R. Co.'s line of road etc. etc." Provision was made for the location of its route, in such manner as should be approved by three commissioners, to be appointed by the governor. Power was given to purchase and hold such real estate, as might be necessary and convenient in accomplishing the objects of the act. It was authorized to construct a railroad, with one or more tracks, on the course designated by its directors and all essential powers were conferred to enable it to construct, maintain and to initiate its operation within this state.

It must, of course, be conceded that the provisions of the

special act would be ineffectual to authorize the condemnation of lands, not required for the precise purposes of the act and to carry it into effect, in the continuation of the petitioner's road between the points named in this state, and that they gave no power to acquire lands by condemnation proceedings after the railroad was constructed, as therein intended and provided for. At that time, and at all times prior to the adoption of the Constitution of 1846, railroad corporations were created by and derived their powers from special laws. Subsequently, pursuant to the authority with which the legislative body was invested by the Constitution adopted by the people in 1846, general railroad laws were enacted; with the object of placing the railroad companies within the state upon a footing of equality, as to their privileges and powers and as to their duties and liabilities. The general act of 1850 (Chap. 140 Session Laws 1850) endowed " all existing railroad corporations within this state" with all the powers and privileges and subjected them to all the duties and liabilities and provisions contained in the act; so far as they should be applicable to their charters. By that act authority was conferred upon railroads, organized under its provisions, to condemn lands for the construction of their roads; but that authority was broadened by subsequent legislation, so as to provide with respect to all existing corporations for the case where additional land might be required, after the construction of the railroad and for the purpose of operating it. Then, in 1892, (Chap. 565 Session Laws), was placed upon our statute books the present General Railroad Law; which, in its fourth section, gave power to "every railroad corporation" to acquire by condemnation such real estate as may be necessary for the construction, maintenance, or accommodation of its railroad. By the seventh section, " all real property, required by any railroad corporation for the purpose of its incorporation, shall be deemed to be required for a public use;" and the right is given to it to acquire title to the real estate required, by condemnation, " where it shall require any further rights to lands, or the use of lands for switches, turnouts etc. etc." It seems

very clear to us that under the law as it stood before the pres-
ent General Railroad Act, as well as under it, the petitioner
was included in the general gift of authority to acquire
additional real estate ; where, as is the case here, it was needed
for its proper operation and to accommodate the road to the
growth of its business and to meet the public demands of
travel and traffic.   The expressions " all existing corpora-
tions" in prior legislation and " any railroad corporation " in
the present general law must be taken in their comprehen-
sive sense ; unless the legislature is inhibited by the funda-
mental law of the state from delegating to other than
domestic corporations the power to exercise the right of
eminent domain.   An argument is based upon the supposed
effect of the provisions of the General Railroad Law,
as it was, or as it is, upon the charters of corporations,
and upon the supposed conflict with the special act of 1846.
We cannot find any such difficulty in bringing the foreign
corporation, authorized to operate its road within this state,
under the directions and restraints of this law.   With respect
to whatever rights it acquired, through the permission and
authority given by the special act of 1846 to maintain and
operate its road here, they were, necessarily, as much subject
to subsequent legislation in their regulation, as were those
acquired by the corporations of this state.   There should, and
can, be no question but that, except where the provisions of
their charters come into material conflict, corporations, with-
out discrimination as to their origin, lawfully exercising their
franchises within this state, were dealt with in the General
Railroad Law and brought under a uniform system of legal
rules and procedure, in the conduct of their affairs and in the
operation of their roads.   But the question here is whether
the legislature of the state could competently authorize foreign
railroad corporations, as well as those organized under our
laws, to acquire additional lands by condemnation.   If it could,
it must be deemed to have done so by this general law.
There is nothing in the Constitution of the state, which limits
the legislature in the exercise of the right of eminent

domain. Its dominion is as broad as the confines of the
state and it may appropriate any part of the property
within the state; subject only to the conditions that the
appropriation shall be for a necessary public use and that
reasonable compensation shall be made. There is no restraint
upon its selection of a corporation created by the laws of
another state, as an instrument to carry the appropriation
to the public use into effect. (*Matter of Townsend*, 39 N.
Y. at p. 175.) In the present case, the petitioner, under the
special act of 1846, was authorized to carry on a part of its
chartered business and to operate a portion of its road in this
state. *Pro tanto*, it is settled here under the sanction of our
laws and, to the extent of its existence and operation here, in
the contemplation of those laws, it is, *pro hac vice*, a state
corporation. (*Matter of Townsend, supra.*) The public
interests were deemed to be promoted by permitting it to
come within our borders and there to conduct its chartered
business. That permission was an act which recognized its
existence as a corporation in this state. Existing here as a
corporation, the act, under which it exists, has neither exempted
it from such general duties as apply to corporations generally
within this state, nor precluded it from enjoying those general
privileges which they enjoy, and which the public interests, in
connection with the operation of a railroad, require that these
*quasi* public agencies should possess. Those interests demand
that the foreign corporation, operating its road here for their
benefit, should have the same powers, as corporations organ-
ized here have, to acquire additional lands for the adequate
transaction of the corporate business.

To hold otherwise would be, in our judgment, illogical and
without sufficient warrant in the law. It is easy to show,
from the reading of the various sections of the present Gen-
eral Railroad Law, that the intention of the legislature was to
include every railroad corporation actually within the state,
without discrimination. This the respondent's counsel has
well pointed out in his brief. As one of the corporations
referred to in the General Railroad Law, those provisions of

the Code of Civil Procedure, which constitute the whole law
of procedure upon the subject of condemnation, must govern
in the proceedings to acquire the lands required by the com-
pany. The procedure of the special act of 1846 was limited
to the precise accomplishment of the purpose of the act.
With the construction of the road and its completion for oper-
ation, the provisions as to procedure ceased and became
unavailable for the future acquisition of additional real estate.
The power conferred by the General Railroad Law could only
be exercised in accordance with the law of procedure, as enacted
by the legislature to govern in all cases of the condemnation
of real property for public use. (Section 3359, Code Civ.
Pro.)

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.